## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| TIMOTHY DEHAAN and JONATHAN SHERRILL,<br><br>　　　Plaintiffs,<br><br>　vs.<br><br>TOP SHOT FIREARMS SIMULATOR INC., MICHAEL NELLINGER and MICHAEL WILSON,<br><br>　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>　Case No.:  1:22-cv-425 |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Timothy DeHaan ("DeHaan") and Jonathan Sherrill ("Sherrill") (collectively, the "Plaintiffs"), by counsel, bring this action against Top Shot Firearms Simulator, Inc. ("Top Shot"), Michael Nellinger ("Nellinger"), and Michael Wilson ("Wilson") (collectively, the "Defendants"), and in support state as follows:

## PARTIES AND JURISDICTION

1.　　This is an action for relief under the provisions of Section 17(a) (15 U.S.C.A. § 77q(a)) and Sections 12(1) and (2) (15 U.S.C.A. § 77-l) of the Securities Act of 1933, as amended (the "Securities Act"), Section 10(b) of the Securities Exchange Act of 1934, as amended (the "Exchange Act") (15 U.S.C.A. § 78j(b)), and Rule 10(b)-5 (17 C.F.R. § 240.10b-5) promulgated under the Exchange Act.

2.　　Jurisdiction of this Court is conferred by Section 22 of the Securities Act (15 U.S.C.A. § 77v) and Section 27 of the Exchange Act (15 U.S.C.A. § 78aa).

3.      Venue is proper in this Court pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa).   Many of the acts, practices, and courses of business constituting the violations alleged herein have occurred within the Southern District of Indiana.

4.      The Court has jurisdiction of under the doctrine of pendent or supplemental jurisdiction pursuant to 28 U.S.C.A. § 1367, in that Counts V - XII arises out of the same transaction as do Counts I - IV.

5.      DeHaan is an individual and citizen of Indiana.

6.      Sherrill is an individual and citizen of Indiana.

7.      Upon information and belief, Michael Nellinger is an individual and a resident of Indiana.

8.      Upon information and belief, Michael Wilson is an individual and a resident of Indiana.

9.      Top Shot is an Indiana corporation with its registered office located at 6601 E. 10th Street, Indianapolis, Indiana 46219.

## FACTS RELEVANT TO ALL COUNTS

10.     Top Shot is a company that provides training, practice, and entertainment through the offering of firearms simulators.

11.     Upon information and belief, Top Shot also intends to franchise its business.

12.     The Plaintiffs were interested in the Top Shot business concept and began discussions with the Defendants regarding possible investment opportunities (the "Potential Investment").[1]

---

[1] Upon information and belief, the Defendants have "investors" in more than one (1) state.  It is unclear whether the Defendants have followed the appropriate securities laws for the other "investors."

13.     On November 1, 2021, DeHaan and Sherrill entered into a Letter of Intent ("LOI") with Top Shot, attached hereto as **Exhibit A**.

14.     The LOI memorialized the Plaintiffs' initial terms for the Potential Investment.

15.     Among other things, the LOI contemplates that the Plaintiffs would invest up to Eight Hundred Seventy-Four Thousand Five Hundred and 00/100 Dollars ($874,500.00) at a per share price of Twenty-Six Thousand Five Hundred and 00/100 Dollars ($26,500.00).

16.     The LOI states that the Plaintiffs could purchase up to thirty-three (33) shares of ownership of Top Shot (the "Shares") through a "tranche" schedule that would be developed at a later date.

17.     The LOI states that the Plaintiffs' minimum investment was the purchase of sixteen and one-half (16.5) Shares for Four Hundred Thirty-Seven Thousand Two Hundred Fifty and 00/100 Dollars ($437,250.00) ("Minimum Investment").

18.     The LOI expressly recognizes that the Minimum Investment would not occur until the Plaintiffs' "special purpose vehicle is adequately organized."

19.     The LOI states that the Plaintiffs intended to make a payment of One Hundred and Six Thousand and 00/100 Dollars ($106,000.00) (the "Initial Payment") "in earnest" to be applied toward the potential purchase of four (4) Shares ("Tranche One").

20.     As stated in the LOI, the Potential Investment was contingent upon several express conditions, including the express requirement that the Plaintiffs would engage in a due diligence process related to the Potential Investment ("Due Diligence"), including, a "collaborative review of existing corporate organization documents, operating agreement, the business financials, stock, subscription agreement, working draft franchise disclosure document and the working draft franchise operations manual."

21.     The Initial Payment is described in the LOI as paid "in earnest" to reflect the parties' mutual agreement and understanding that such funds were being prepaid upon execution of the LOI, because "time is of the essence," and upon satisfaction of the conditions stated in the LOI, including completion of Due Diligence, the Initial Payment would be applied to the Tranche One.

22.     In early November of 2021, the Defendants provided the Plaintiffs with a proposed Subscription Agreement, attached hereto as **Exhibit B**.

23.     As part of Due Diligence, on November 22, 2021, the Plaintiffs sent the Defendants a memorandum titled "Initial Requests for Information" (the "Initial Requests") which requested the Defendants provide (i) written responses to a number of questions; and (ii) copies of Top Shot's governing documents, corporate records, and agreements.

24.     On November 23, 2021, the Defendants provided partial but incomplete responses to the Initial Requests (the "Initial Responses").

25.     The Initial Responses confirm the structure of the Potential Investment, acknowledging that the Tranche One Shares would not be sold until the Subscription Agreement was executed.

26.     On November 24, 2021, DeHaan, on behalf of the Plaintiffs, remitted the Initial Payment to Top Shot via a wire transfer.  The Initial Payment was made through DeHaan's investment company, Tim DeHaan Investments LLC.

27.     On December 16, 2021, the Defendants provided the Plaintiffs with access to the electronic versions of a draft Franchise Disclose Document ("FDD") and Franchise Agreement ("FA"), and related schedules and exhibits thereto.

28.     After review of the Initial Responses, draft FDD, and draft FA, the Plaintiffs became concerned that the information the Defendants provided in Due Diligence was neither complete nor compliant with state and federal law.

29.     For example, the Initial Responses reference certain relevant responsive agreements and contained excerpts to specific documents, such as a "Buy/Sell Agreement" but copies of those materials and documents were not provided.  No explanation was given as to why such information was withheld.

30.     After reviewing the draft FDD and FA, the Plaintiffs determined that such agreements were not compliant with relevant federal and state law governing the regulation of franchises.

31.     After reviewing the Subscription Agreement, the Plaintiffs determined that Top Shot had not properly satisfied state and federal law governing the offering and sale of unregistered securities.

32.     On January 3, 2022, the Plaintiffs sent another lengthy memorandum outlining their feedback, questions, and concerns regarding the FDD, FA, and Initial Responses, including a highly detailed analysis of the deficiencies in Top Shot's legal compliance with state and federal franchise and securities laws.

33.     The Plaintiffs also reiterated their need to review all the documents identified in their Initial Requests, specifically reissuing their request to review all of the documents which Top Shot acknowledged were already created, such as the Private Placement Memorandum, Investor Term Sheet, Shareholders' Agreement, intellectual property license agreements, among others.

34.     In the weeks following the January 3, 2022, Top Shot provided additional documents and information, including but not limited to an Operating Agreement,[2] Investor Term Sheet, and Private Placement Memorandum, none of which had been previously provided to the Plaintiffs, despite several requests.

35.     The Plaintiffs engaged legal counsel and incurred substantial legal fees to review all of the materials and information provided in Due Diligence.

36.     At the Plaintiffs' sole expense, the Plaintiffs' had their attorneys provide numerous proposed revisions, recommendations, and legal analysis to Top Shot to address the deficient, incomplete, incorrect, and inconsistent documents, agreements, and materials that the Defendants had created.

37.     On January 11, 2022, the Defendants sent updated versions of the FDD and FA, along with a letter acknowledging many of the issues that the Plaintiffs previously identified.

38.     During the first few weeks of January 2022, it became evident that the parties disagreed on numerous legal, operational, and financial issues related to Top Shot's business plan and franchising strategy.  The Plaintiffs expressed their concerns, reservations, and disagreement with the Defendants' decisions.  Ultimately, the parties were unable to reach a consensus on these legal, operational, and financial disagreements.

39.     For example, the Plaintiffs were concerned that the Defendants planned to franchise the Top Shot concept without implementing several critical procedures and requirements that are common in successful franchises, such as development of (i) an established system organically developed from the operation of company-owned locations, (ii) a completed operations manual, and (iii) a federally-registered "standard character" trademark.

---

[2] Although Top Shot is a corporation, it apparently created an "Operating Agreement" in lieu of a Shareholders' Agreement, which is typically only used in connection with limited liability companies.

40.     Furthermore, the Plaintiffs were deeply troubled about the potential legal issues that could subject Top Shot and its principals to liability, including state franchise regulatory compliance, the manner the corporation would be taxed, and whether Top Shot had satisfied state and federal securities laws.

41.     By the end of January of 2022, it was apparent to the Plaintiffs that a significant number of documents and materials had been in existence at the time the LOI was signed, the Initial Responses provided, and the Initial Payment was deposited, but such information had been withheld from the Plaintiffs without explanation.

42.     As a direct result of Defendants' actions throughout the negotiations, the Plaintiffs determined that they were not satisfied with the results of their Due Diligence inspections of Top Shot, as contemplated by the LOI's express conditions.

43.     On January 27, 2022, the Plaintiffs sent Top Shot a written communication advising the Defendants that, because certain conditions of the LOI had not been met and the Defendants had failed to disclose all material information requested in Due Diligence, they were not proceeding with completion of Tranche One, nor the Potential Investment generally (the "Notice Letter").

44.     The Notice Letter instructed Top Shot to return the Initial Payment by February 4, 2022.

45.     Top Shot did not return the Initial Payment in accordance with the Plaintiffs' written instructions.

46.     On February 8, 2022, Sherrill sent Wilson a text message asking if the Defendants planned to return the Initial Payment.

47.     On February 10, 2022, the Defendants sent the Plaintiffs a responsive letter (the "Response Letter").

48.     In the Response Letter, the Defendants made unfounded claims that they had responded to all of the Plaintiffs' questions and requests for information.

49.     The Defendants also alleged, contrary to its express terms, the LOI was binding on the Plaintiffs, that the Plaintiffs had already "purchased" four (4) Shares, and that the Defendants could "force" the Plaintiffs to buy twelve and one-half (12.5) more Shares if they so desired.

50.     Further, in the Response Letter, the Defendants refused to return the Initial Payment, but offered to "sell" the Plaintiffs' four (4) Shares to a new investor for the "same valuation" used for the Plaintiffs' alleged share purchase.

51.     The Defendants characterized their proposal, and refusal to return the money, as a "fair compromise."

52.     Excepting the LOI, the Plaintiffs never executed any written agreement or other document regarding the purchase of the Shares.  The Subscription Agreement presented to the Plaintiffs in November 2021 was never executed by any of the parties.

53.     At no time were the Plaintiffs presented with any Shareholders' Agreement or similar contract regarding the ownership of the Shares.

54.     Despite numerous requests, at no time did Top Shot provide the Plaintiffs with any documentation related to its state or federal securities compliance, including copies of Form D, applications or notices of state securities registration exemptions, or copies of executed Subscription Agreements by all shareholders.

55.     The Shares are securities as defined in the Securities Act, specifically Section 2(1) of the Securities Act (15 U.S.C.A. § 77b(1)).  Neither the offers or sales of the Shares satisfy any

of the requirements for exemption from the registration requirement listed in Sections 3 or 4 of the Securities Act (15 U.S.C. §§ 77c or 77d).

56.     Neither preceding the offers or attempted sales of the Shares, nor during negotiation for the offers or sales, did Defendants or any other person on Defendants' behalf procure an express or implied authorization from the Securities and Exchange Commission to sell the Shares.

57.     At no time did Defendants, or anyone on Defendants' behalf, comply with the requirements of the Securities Act, or the regulations promulgated under the Securities Act, with respect to the sale or offering for sale of the Shares, by filing in the office of the Securities and Exchange Commission, any statements or documents required by the Securities Act.

58.     The sales and offers of the Shares violated Section 5 of the Securities Act (15 U.S.C. § 77e(a)) because the Defendants, directly or indirectly: (i) made use of the means and instruments of transportation and communication in interstate commerce and of the mails to sell the unregistered Shares; and (ii) carried and caused to be carried through the mails and in interstate commerce, by means and instruments of transportation, the unregistered Shares for the purpose of sale and for delivery after sale.

59.     The Shares that were offered to the Plaintiffs are securities under the Indiana Securities Act as defined by Ind. Code § 23-19-1-2(28).

60.     The securities offered by the Defendants were not registered with the Indiana Securities Division, in violation of Ind. Code § 23-19-3-1(3).

61.     The securities offered by the Defendants were not exempt from registration with the Indiana Securities Division pursuant to Ind. Code § 23-19-3-1(2).

## COUNT I: VIOLATION OF SECTION 5 AND SECTION 12 OF THE SECURITIES ACT (ALL DEFENDANTS)

62.     The Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

63.     By their conduct, Defendants directly or indirectly: (i) made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of a prospectus and/or written or oral communication, securities as to which no registration statement was in effect; (ii) for the purpose of sale or delivery after sale, carried or caused to be carried through the mails or in interstate commerce, by any means or instruments of transportation, securities as to which no registration statement was in effect; and (iii) made use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy, through the use or medium of a prospectus and/or written or oral communication, securities as to which no registration statement had been filed.

64.     These securities were not registered with the Securities and Exchange Commission as required by Section 5 of the Securities Act (15 U.S.C.A. § 77e) and, therefore, were offered and/or sold by Defendants in violation of Section 12(1) of the Securities Act (15 U.S.C.A. § 77-l).

WHEREFORE, Plaintiffs, by counsel, respectfully request this Court enter judgment in their favor and against Top Shot on their claim for violations of the Securities Act, award rescission of the transaction, award damages and attorneys' fees and costs of this action, and for all other just and proper relief in the premises.

## COUNT II: VIOLATION OF SECTION 17(a) OF THE SECURITIES ACT
## (ALL DEFENDANTS)

65.     The Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

66.     By engaging in the conduct described in the foregoing paragraphs, Defendants, in the offer and sale of securities, by the use of the means and instruments of interstate commerce, directly or indirectly: (i) employed devices, schemes and artifices to defraud; (ii) obtained money or property by means of untrue statements of material fact or by omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices, or courses of business that operated or would operate as a fraud or deceit upon the purchasers of such securities.

67.     Defendants intentionally, recklessly, and negligently engaged in the conduct described above.

68.     By reason of the foregoing, Defendants violated Section 17(a) of the Securities Act (15 U.S.C. § 77q(a)).

WHEREFORE, Plaintiffs, by counsel, respectfully request this Court enter judgment in their favor and against Top Shot on their claim for violations of the Securities Act, award rescission of the transaction, award damages and attorneys' fees and costs of this action, and for all other just and proper relief in the premises.

## COUNT III: VIOLATION OF SECTION 10(b) OF THE SECURITIES ACT
## (ALL DEFENDANTS)

69.     The Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

70.     Defendants Nellinger and Wilson carried out a plan, scheme, and course of conduct which was intended to and did: (i) deceive Plaintiffs, as alleged herein; (ii) cause Plaintiffs to reasonably rely on the representations stated above; and (iii) cause Plaintiffs to purchase securities that did not have the values represented.  In furtherance of this unlawful scheme, plan, and course of conduct, Defendants Nellinger and Wilson took the actions set forth herein.

71.     Defendants Nellinger and Wilson: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon Plaintiffs in violation of Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. 240.10b-5).

72.     The statements made by Defendants Nellinger and Wilson were materially false and misleading because at the time they were made, the Defendants knew, or with conscious or deliberate recklessness ignored, but failed to disclose, the matters set forth herein.

73.     In ignorance of the falsity of the statements made by Defendants Nellinger and Wilson, and relying directly upon Defendants or indirectly on the false and misleading statements made by Defendants, Plaintiffs entered into the LOI and remitted the Initial Payment, and they were damaged thereby.

74.     Had Plaintiffs known the true facts, including Top Shot's material non-compliance with state and federal securities and franchise laws, Plaintiffs would not have entered into the LOI, or remitted the Initial Payment.  Thus, Plaintiffs were damaged by Defendants' violations of Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. 240.10b-5).

WHEREFORE, Plaintiffs, by counsel, respectfully request this Court enter judgment in their favor and against Defendants on their claim for violations of the Exchange Act, award

rescission of the transaction, award damages and attorneys' fees and costs of this action, and for all other just and proper relief in the premises.

## COUNT IV: VIOLATION OF SECTION 20(a) OF THE EXCHANGE ACT (NELLINGER AND WILSON)

75.     The Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

76.     Defendants Nellinger and Wilson acted as controlling persons of Top Shot within the meaning of Section 20(a) of the Exchange Act (15 U.S.C.A. § 78t-1), as alleged in this Complaint.  By virtue of their respective high-level positions, and active participation in and/or awareness of the day-to-day operations at Top Shot, Nellinger and Wilson had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of Top Shot, including the materials, documents, and communications which Plaintiffs allege were false and misleading.

77.     In particular, Defendants Nellinger and Wilson had direct and supervisory involvement in the day-to-day operations of Top Shot, and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged, and exercised the same.

78.     As set forth above, Defendants Nellinger and Wilson violated Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. 240.10b-5) by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Officer Defendants are liable pursuant to Section 20(a) the Exchange Act (15 U.S.C.A. § 78t-1).

79.     As a direct and proximate result of these Defendants' wrongful conduct, Plaintiffs suffered damages in connection with entering into the LOI and making the Initial Payment.

WHEREFORE, Plaintiffs, by counsel, respectfully request this Court enter judgment in their favor and against Defendants Nellinger and Wilson on their claim for violations of the Exchange Act, award rescission of the transaction, award damages and attorneys' fees and costs of this action, and for all other just and proper relief in the premises.

## COUNT V:  SECURITIES FRAUD UNDER INDIANA LAW
## (ALL DEFENDANTS)

80.     The Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

81.      Indiana Code § 23-19-5-1 of the Indiana Securities Act provides that:

> It is unlawful for a person, in connection with the offer, sale, or purchase of a security, directly or indirectly:
>
> (1)     to employ a device, scheme, or artifice to defraud;
>
> (2)     to make an untrue statement of material fact or to omit to state a material fact necessary in order to make the statement made, in the light of the circumstances under which they were made, not misleading; or
>
> (3)     to engage in an act, practice or course of business that operates or would operate as fraud or deceit upon another person.

82.     Indiana Code § 23-19-5-9 further provides that a person is civilly liable to the purchaser of a security "if the person sells the security in violation of this article."

83.     As alleged herein, the Defendants omitted materials facts regarding the Potential Investment that were necessary in order to make the statements made, in light of the circumstances, not misleading.

84.     Defendants also engaged in a course of business that operates or would operate as a fraud or deceit to persons interested in investing in Top Shot, like the Plaintiffs.

85.     But for the Defendants' fraud and misrepresentations, the Plaintiffs would not have signed the LOI or remitted the Initial Payment.

86.     Accordingly, the Plaintiffs are entitled to recover the Initial Payment made "in earnest," and/or actual damages.

87.     Based upon the foregoing facts, Top Shot is legally liable to the Plaintiffs pursuant to the express liability provisions of the Indiana Securities Act, specifically Indiana Code § 23-19-5-9.

88.     The individual Defendants, Wilson and Nellinger, were at the times of the offer of the securities: (i) officers of Top Shot, (ii) directors of Top Shot, or (iii) persons with control over Top Shot, and hence are liable to the Plaintiffs pursuant to Indiana Code § 23-19-5-9(d).

WHEREFORE, Plaintiffs, by counsel, respectfully request this Court enter judgment in their favor and against Top Shot on their claim for violations of the Indiana Securities Act, award rescission of the transaction, award damages and attorneys' fees and costs of this action, and for all other just and proper relief in the premises.

## COUNT VI: SALE OF UNREGISTERED SECURITIES UNDER INDIANA LAW
## (ALL DEFENDANTS)

89.     The Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

90.     It is unlawful for any person to offer or sell any security in Indiana unless such securities are registered with the Indiana Securities Division. (Ind. Code § 23-19-3-1(3)).

91.     Accordingly, the Plaintiffs are entitled to recover the Initial Payment made "in earnest," and/or actual damages.

92.     Based upon the foregoing facts, Top Shot is legally liable to the Plaintiffs pursuant to the express liability provisions of the Indiana Securities Act, specifically Indiana Code § 23-19-5-9.

93.     The individual Defendants, Wilson and Nellinger were at the times of the offer of the securities: (i) officers of Top Shot, (ii) directors of Top Shot, or (iii) persons with control over Top Shot, and hence are liable to the Plaintiffs pursuant to Indiana Code § 23-19-5-9(d).

WHEREFORE, Plaintiffs, by counsel, respectfully request this Court enter judgment in their favor and against Top Shot on their claim for violations of the Indiana Securities Act, award rescission of the transaction, award damages and attorneys' fees and costs of this action, and for all other just and proper relief in the premises.

## COUNT VII: BREACH OF CONTRACT
## (TOP SHOT)

94.     The Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

95.     The LOI is a valid and enforceable contract between the parties.

96.     The LOI expressly stated that the Potential Investment was subject to certain conditions, including the "collaborative review of existing corporate organization documents, operating agreement, the business financials, stock, subscription agreement, working draft franchise disclosure document and the working draft franchise operations manual" and the Plaintiffs' formation of a special purpose vehicle being organized.

97.     The Plaintiffs remitted the Initial Payment "in earnest" to be applied towards Tranche One of the Potential Investment.

98.     The conditions to purchasing the Shares were not satisfied.

99.     The Potential Investment was never finalized and the Plaintiffs never purchased any Shares.

100.    Despite written demand, the Defendants have refused to return the Initial Payment, in breach of the LOI.

101.    As a result of Top Shot's breach of the LOI, the Plaintiffs have and continue to suffer damages.

WHEREFORE, Plaintiffs, by counsel, respectfully request this Court enter judgment in their favor and against Top Shot on their claim for breach of contract, award damages including but not limited to actual and consequential damages, and for all other just and proper relief in the premises.

### COUNT VIII: UNJUST ENRICHMENT(In the Alternative) (TOP SHOT)

102.    The Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

103.    The Plaintiffs remitted the Initial Payment to Top Shot as a pre-payment for Tranche One of the Potential Investment, thereby conveying a benefit on Top Shot at its request.

104.    The Potential Investment was never finalized and the Plaintiffs never purchased any Shares.

105.    Because the Plaintiffs did not purchase any Shares, Top Shot has knowingly and intentionally retained the Initial Payment, which would be unjust without restitution to the Plaintiffs.

106.    By characterizing the Initial Payment as being made "in earnest" they clearly intended to expect repayment if the Potential Investment was not completed.

107.    Accordingly, the Plaintiffs are entitled to a return of the Initial Payment as a result of Top Shot's inequitable conduct.

WHEREFORE, Plaintiffs, by counsel, respectfully request this Court enter judgment in their favor and against Top Shot on their claim for unjust enrichment, award damages including

but not limited to actual and consequential damages, and for all other just and proper relief in the premises.

## COUNT IX: PROMISSORY ESTOPPEL (In the Alternative) (TOP SHOT)

108.    The Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

109.    Top Shot made clear and unambiguous promises to the Plaintiffs, including, that Top Shot would provide accurate, complete, and current information and materials to the Plaintiffs, for their completion of Due Diligence.

110.    Top Shot made clear and unambiguous promises to the Plaintiffs that the Potential Investment was subject to certain express conditions.

111.    Top Shot made such promises with the expectation that the Plaintiffs would rely thereon.

112.    The Plaintiffs acted in reliance on the promises Top Shot made.

113.    The Plaintiffs' reliance on Top Shot's promises were both reasonable and foreseeable.

114.    The Plaintiffs have suffered and continue to suffer damages as a result of Top Shot's actions.

115.    Injustice can only be avoided by enforcing Top Shot's duty to return the Initial Payment to the Plaintiffs.

WHEREFORE, Plaintiffs, by counsel, respectfully request this Court enter judgment in their favor and against Top Shot on their claim for promissory estoppel, award damages including but not limited to actual and consequential damages, and for all other just and proper relief in the premises.

## COUNT X:  CRIMINAL CONVERSION
## (ALL DEFENDANTS)

116.     The Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

117.     The Defendants willfully, intentionally, and knowingly have retained the Initial Payment, despite the fact that the Plaintiffs did not complete the Potential Investment.

118.     Despite the Plaintiffs' written demand, Defendants have failed and refused to return the Initial Payment and retained such funds for their own use.

119.     As a direct and proximate result of Defendants refusal to return the Initial Payment, the Plaintiffs have incurred damages in an amount exceeding One Hundred Six Thousand and 00/100 Dollars ($106,000.00).

120.     Defendants conversion of the Initial Payment was intentional, willful, and in knowing violation of the Plaintiffs' ownership interests. Accordingly, the Plaintiffs are entitled to recover three (3) times their actual damages, the costs of this action, and attorneys' fees.

WHEREFORE, Plaintiffs, by counsel, respectfully request this Court enter judgment in their favor and against Defendants for their claim of criminal conversion, award damages equal to three (3) times their actual damages, costs of this action, and attorneys' fees, and for all other just and proper relief in the premises.

## COUNT XI:  FRAUD IN THE INDUCEMENT
## (ALL DEFENDANTS)

121.     The Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

122.     On November 1, 2021, Defendants induced the Plaintiffs to enter into the LOI, as a result of certain representations the Defendants made.

123.    On November 22-23, 2021, Defendants induced the Plaintiffs to remit the Initial Payment to Top Shot on the basis of its representations contained in the Initial Responses, including, without limitation, (i) the existence of certain documents and agreements, such as a Private Placement Memorandum, Investor Term Sheet, and Shareholders' Agreement, (ii) the existence of state franchise registrations, and (iii) the ownership interests of Jason Barnes.

124.    Despite Defendants' misrepresentations on November 23, 2021, Defendants failed to provide the Plaintiffs copies of the Private Placement Memorandum, Investor Term Sheet, and Shareholders' Agreement, despite the fact that such documents were in existence on that date, as the Plaintiffs later discovered.

125.    Defendants misrepresented that it had obtained state franchise registrations, though no records of such registrations were provided.

126.    Defendants misrepresented that it had sold one (1) share of Top Shot stock to investor Jason Barnes, an Arizona resident, at the per share value of Twenty-Six Thousand Five Hundred and 00/100 Dollars ($26,500.00), though Defendants never provided documentation that such transaction was ever completed, and/or was completed in compliance with state and federal securities laws.

127.    Defendants made these misrepresentations to the Plaintiffs knowing them to be false and fraudulent, or with reckless indifference to the truth, with the intention of inducing the Plaintiffs to enter into the LOI and remit the Initial Payment.

128.    As a result of Defendants' fraudulent conduct, the Plaintiffs have suffered and continue to suffer damages.

WHEREFORE, Plaintiffs, by counsel, respectfully request this Court enter judgment in their favor and against Top Shot on their claim for fraud in the inducement, award damages

including but not limited to actual and consequential damages and attorneys' fees, and for all other just and proper relief in the premises.

## COUNT XII: RESCISSION (In the Alternative) (TOP SHOT)

129.    The Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

130.    The LOI is a valid and enforceable contract between the parties.

131.    The LOI expressly stated that the Potential Investment was subject to certain conditions, including the "collaborative review of existing corporate organization documents, operating agreement, the business financials, stock, subscription agreement, working draft franchise disclosure document and the working draft franchise operations manual" and the Plaintiffs' formation of a special purpose vehicle being organized.

132.    The Plaintiffs remitted the Initial Payment "in earnest" to be applied towards Tranche One of the Potential Investment.

133.    The conditions to purchasing the Shares were not satisfied.

134.    The Potential Investment was never finalized, and the Plaintiffs never purchased any Shares.

135.    Despite written demand, the Defendants have refused to return the Initial Payment, in breach of the LOI.

136.    The Plaintiffs exercised reasonable diligence in ascertaining the facts, attempting to mitigate their losses, and demanded rescission within a reasonable time after discovering the Defendants' fraudulent misrepresentations.

137.    Neither the Plaintiffs' execution of LOI and all related documents, nor the Plaintiffs' purported consent to the provisions of the LOI and all related documents was made

freely; thus, the above-mentioned documents are void in that such execution and the consent were obtained by fraud, misrepresentation, and concealment practiced on the Plaintiffs by the Defendants.

138.    Plaintiffs intend the service of this Complaint to serve as notice to Defendants of rescission of the LOI and offers to restore to Defendants all consideration furnished by them to Plaintiffs pursuant to the purported agreements on condition that Defendants restore to Plaintiffs all consideration furnished by Plaintiffs.

139.    Plaintiffs are entitled to restoration of all sums paid by Plaintiffs as consideration under the above-mentioned agreements.

140.    Plaintiffs are entitled to an entry of judgment in their favor rescinding the LOI and awarding Plaintiffs additional damages so as to make them whole.

WHEREFORE, the Plaintiffs respectfully request, this Court enter judgment in their favor and against Top Shot on their claim for rescission, enter an order rescinding the LOI and otherwise declaring it null and void, and award damages including but not limited to actual and consequential damages and attorneys' fees, and for all other just and proper relief in the premises.

## <u>JURY DEMAND</u>

Plaintiffs Timothy DeHaan and Jonathan Sherrill hereby demand a trial by jury on all claims of relief where available.

Respectfully submitted,

*s/William J. Brinkerhoff*
B.J. Brinkerhoff, Attorney No. 24811-53
Hannah Kaufman Joseph, Attorney No. 24974-49
JESELSKIS BRINKERHOFF AND JOSEPH, LLC
320 North Meridian Street, Suite 428
Indianapolis, IN 46204
Telephone:  (317) 220-6290
Facsimile:  (317) 220-6291

bjbrinkerhoff@jbjlegal.com
hjoseph@jbjlegal.com

*Counsel for Plaintiffs*